**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**ROBERT JOHN BLUMENBERG, JR.,**

      **Plaintiff,**

**vs.**                             **Case No.  1:17cv181-MW/CAS**

**NANCY A. BERRYHILL, Deputy
Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
the Social Security Administration,[1]**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      This is a Social Security case referred to the undersigned United

States Magistrate Judge for a report and recommendation pursuant to 28

U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court

pursuant to 42 U.S.C. § 405(g) for review of the final determination of the

Deputy Commissioner for Operations ("Commissioner") of the Social

Security Administration (SSA) denying Plaintiff's Title II application for

period of disability and Disability Insurance Benefits.  After careful

---

[1] Nancy A. Berryhill, former Acting Commissioner, currently leads the Social Security Administration as Deputy Commissioner for Operations pending the confirmation of a Commissioner.  *See* https://www.ssa.gov/agency/ commissioner.html (last visited April 16, 2018).  Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the Defendant.

consideration of the entire record, it is respectfully recommended that the decision of the Commissioner be affirmed.

### I. Procedural History and Facts

Plaintiff was previously granted disability insurance benefits on June 29, 2011, with entitlement to disability commencing on March 24, 2011. Tr. 73, 75-76.[2]  His benefits were based on military combat injuries including perineal area, right thigh and calf injuries, no motor function in right foot, left leg below the knee amputation, leg and ankle injuries, major tissue damage, kidney damage, stage II pressure ulcer below sacrum, broken right arm, back injury, fractured hip/pelvis, hypogonadism, and nerve damage requiring use of a colostomy bag and urinary catheter. Tr. 76.

Pursuant to a disability review in which it was determined that Plaintiff had achieved medical improvement, Plaintiff was found not disabled as of April 1, 2015.  Tr. 78-79, 82, 86.  That determination was upheld by a State agency Disability Hearing Officer.  Tr. 102-06.  Plaintiff requested a hearing, which was held by videoconference in Jacksonville, Florida, on August 23, 2016.  Tr. 33-68.  Plaintiff appeared pro se and testified in

---

[2] Citations to the transcript/administrative record contained in ECF No. 9 shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

Gainesville, Florida, after waiving his right to representation at the hearing. Tr. 37-38, 148.  Impartial vocational expert Charles K. Heartsill also appeared and testified at the hearing.  Tr. 59-65.

A decision was issued on January 19, 2017, finding Plaintiff was no longer disabled, Tr. 9-19, and the Appeals Council denied review.  Tr. 1-5. Accordingly, on July 14, 2017, Plaintiff, appearing through counsel, filed a complaint for judicial review pursuant to 42 U.S.C. §§ 1381, *et seq.,* and 42 U.S.C. § 405(g).  *See* ECF No. 1.  Respondent filed an answer on September 22, 2017, ECF No. 8, and both parties filed memoranda in support of their positions.  ECF Nos. 17, 18.

### A. Hearing Testimony

At the hearing held August 23, 2016, Plaintiff, age 31 at the time of the hearing, testified that he graduated from high school and served in the Marine Corps as an infantryman.  Tr. 39.  While on active duty in Afghanistan, he was injured by an Improvised Explosive Device (IED). Tr. 40.  He was found to be disabled in 2011 but that disability was determined to have ended in April 2015.  Tr. 41.

Plaintiff testified he is still being treated medically by the Veterans Administration (VA) in Tampa, where he received his prosthesis for his amputated left leg.  *Id.*  He testified he visits the VA hospital in Tampa

about every other month, but more frequently if he is having difficulty with his prosthesis.  Tr. 43.  His regular physician is Dr. Samantha Mendelson of the VA's Spinal Cord Institute.  Tr. 48.  As of the date of the hearing, his most recent visit was in June 2016 to be treated for an ongoing pressure sore on his buttocks.  Tr. 42.  He testified that he can drive a car but can only drive for about an hour due to the pressure sore.  Tr. 43.

Plaintiff testified that he was currently waiting for completion of a new prosthesis because the one he had was causing pain due to an ill-fitting socket.  Tr. 44.  He said he has had about twelve different prostheses due to changes in his leg.  Tr. 48.  He has been unable to wear his current prosthesis for about two and a half months and has been using a wheelchair, although he expects to be fitted for his new prosthesis in less than a month.  Tr. 44.  Plaintiff testified he had been doing bicycling on a hand bike, but had to stop due to the pressure sore.  Tr. 45.  He was hospitalized in January 2016 due to a nerve flare-up in his back arising from a bladder infection, which comes and goes.  Tr. 46-47.  He takes the occasional antibiotic, when necessary, and takes Tylenol.  Tr. 47.

He lives with his wife and two young sons in a handicap-accessible home.  Tr. 49.  During the day, he tries to cook occasionally and help with the dishes.  He cannot do laundry or vacuuming, which his wife does.

Tr. 50.  He helps his children with homework and supervises their chores. *Id.*  He said he spends the majority of his time—more than eight hours a day—in his wheelchair, which has a special cushion to relieve pressure from sitting, although he also tries to move around to change the pressure points once an hour.  Tr. 51-53.  He can wear his prosthesis when he goes to the grocery store but cannot walk or stand for very long—maybe 15 minutes.  *Id.*  For a more extended shopping trip, he will use the handicap cart.  Tr. 51.

Plaintiff testified he cannot lift much weight with his right hand because a portion of it and his forearm is missing.  The bones in his right forearm are fused so he cannot turn his wrist.  Tr. 54.  He can open a door with his right hand if it has a lever handle, but not if it has a round handle. *Id.*  He can hold possibly fifteen pounds with his right hand.  Tr. 53.  His left hand is fine and he uses it to roll his wheelchair and do other things, even though he is right-handed.  Tr. 54.  He has learned to eat with his left hand, although his wife usually helps him if something needs to be cut up.  *Id.*  He can dress himself, but his wife helps him to bathe and take care of his colostomy bag and his catheter.  Tr. 55.  He tries to care for the family dog. Tr. 57.  His wife began a teaching job so he is home alone for much of the day, but he will call his mother to come over if he needs help.  *Id.*

Plaintiff testified he is no longer being given physical therapy through the VA.  Tr. 49.  He has not sought any retraining through the VA or the Florida Division of Vocational Rehabilitation.  Tr. 55.  He participates in the Wounded Warrior Project when he can and tries to participate in his children's functions, although his nerve pain sometimes makes that difficult.  Tr. 56.

Impartial vocational expert, Charles K. Heartsill, testified that he would be relying on the Dictionary of Occupational Titles (DOT) and jobs identified by the United States Department of Labor's Bureau of Labor Statistics, through the Occupational Employment Survey.[3]  Tr. 60.  The

---

[3]  The Dictionary of Occupational Titles (4th Ed., Rev. 1991), is one of the examples of sources that the ALJ may rely on for job information.  *See* SSR 00-4p; 20 C.F.R. § 404.1566(d).  The ALJ may also rely on a vocational expert or other specialist.  *See* § 404.1566(e).  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, Specific Vocational Preparation (SVP), 1991 WL 688702.  An SVP of 2 allows for preparation time of "[a]nything beyond short demonstration up to and including 1 month," an SVP of 3 allows "[o]ver one month up to and including 3 months," and an SVP of 4 allows for "over 3 months up to and including 6 months."  *Id.*  Semi-skilled work is work that needs some skills but does not require doing the more complex work duties.  20 C.F.R. § 404.1568(b).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  Unskilled work corresponds to an SVP of 1-2 whereas semi-skilled work corresponds to an SVP of 3-4. Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools." 20 C.F.R. § 404.1567(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

vocational expert said he will also rely on his past experience in studying how jobs are being performed in terms of mental and physical demands. Tr. 61.  He testified that Plaintiff's past work in the Marine Corps fell under the job category of infantry weapons crew member, DOT code 378.684-026, very heavy, SVP of 3.[4]  *Id.*

The ALJ posed a hypothetical question to the vocational expert, asking him to assume a younger individual of 31 years of age with a high school education and past semi-skilled work, who can sit for six hours a day, stand and walk for four hours, lift with his dominant right hand ten pounds occasionally and five pounds or less more frequently, who can lift twenty pounds with his left hand and ten pounds or less more frequently. Tr. 62.  This individual can occasionally push or pull arm or hand controls with his right hand and frequently with his left, push or pull leg controls occasionally with both feet, cannot climb ramps, stairs, ropes, ladders, or scaffolding.  He can balance, bend, stoop, etc., on an occasional basis. Tr. 63.  The individual cannot work at unprotected heights, around dangerous moving machinery, or in proximity to concentrated industrial vibration.  The hypothetical individual has no mental impairments that

---

[4] As for his past work in the military, Plaintiff testified that he had on occasion to lift and carry up to 200 pounds.  Tr. 62.

reduce his occupational work base.  *Id.*  The vocational expert confirmed that such an individual could not do the past work of Plaintiff, but there would be other light and sedentary work that he could perform.  *Id.*

The vocational expert testified that such an individual could perform the following representative jobs: surveillance system monitor, DOT code 379.367-010, sedentary, SVP of 2, of which there are 113,020 jobs nationally and 2,884 jobs in the region (Florida); call-out operator, DOT code 237.367-014, sedentary, SVP of 2, of which there are 11,842 jobs nationally and 834 in the region; and ticket seller, DOT code 211.467-030, light, SVP 2, of which there are 35,258 jobs nationally and 2,253 in the region.  Tr. 63-64.  He testified that, in his opinion, ticket seller is a job that can be performed with a sit/stand option and can be sedentary, which differs from the way the job is defined in the DOT.  Tr. 64.

In a second hypothetical, the ALJ revised the limitation of standing and walking to two hours a day.  *Id.*  The vocational expert testified that the person could still perform the jobs which he just described.  *Id.*  He testified that he had taken into account, in reaching his opinions, the manipulative issues with the individual's right hand, and that the jobs described only require occasional reaching, handling, fingering, and feeling and focus more on oral skills.  Tr. 65.

In response to the testimony of the vocational expert, Plaintiff testified that the expert did not address the situation that would occur when Plaintiff has nerve flare-ups that prevent him from working for three straight days or when he has problems with his colostomy bag or his catheter bag and he gets soiled while at work.  He stated, "I mean those are all real world situations that are - - can't really be hypothesized.  And that's stuff that I deal with on a daily basis."  Tr. 66-67.  The ALJ noted that these situations are not reflected in the file but he would see what more recent records from the Tampa VA might show.  Tr. 67.

## B. The Decision of the Administrative Law Judge

On January 19, 2017, the ALJ issued a decision finding that Plaintiff's disability ended on April 1, 2015.  Tr. 9-19.  The ALJ noted that he must follow an eight-step evaluation process to answer the question of whether Plaintiff's disability ended under section 223(f) of the Social Security Act. The ALJ made several findings pertinent to this review.  Tr. 11-19.  Plaintiff is a younger individual age 18-44 on April 1, 2015, the date that the Commissioner determined Plaintiff's disability ended.  Tr. 18.  The ALJ found that Plaintiff has not engaged in any substantial gainful activity since the alleged onset date through the date of the decision.  Tr. 11.  Plaintiff

has at least a high school education and is able to communicate in English.
Tr. 18.

The most recent favorable medical decision finding that Plaintiff was
disabled is the determination dated June 29, 2011, which is known as the
"Comparison Point Decision" or CPD.  Tr. 11.  The ALJ reported that, at the
time of the CPD, Plaintiff had the following medically determinable
impairments: history of multiple traumatic injuries including left leg
amputation below the knee, broken right arm, back injury, fractured
hip/pelvis, and kidney damage.  *Id.*  Since April 1, 2015, Plaintiff had the
following medically determinable impairments: a history of hypogonadism,
history of obesity, history of left below the knee amputation, history of a
neurogenic bladder and bowel, and a history of lumbosacral plexopathy.
*Id.*

The ALJ found that since April 1, 2015, Plaintiff has not had an
impairment or combination of impairments that met or medically equaled
the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,
Appendix 1.  Tr. 11.  In reaching this conclusion, the ALJ found that the
medical records do not demonstrate that all additional requirements set
forth by any of the pertinent paragraphs of section 1 (musculoskeletal
system), section 5 (digestive system), section 9 (endocrine system), and

section 11 (neurological), all of which were considered by the ALJ.  *Id.*  The ALJ concluded that Plaintiff had medical improvement, which is related to the ability to work, because by April 1, 2015, Plaintiff's CPD impairments no longer met or medically equaled Listing 1.05B, the listing that was met at the time of the CPD.  Tr. 12.

The ALJ found that Plaintiff's medical improvement occurred on April 1, 2015, as shown by medical evidence of marked improvement in ability to ambulate on the left prosthetic leg, cessation of prescription medication for pain, and an active lifestyle.  The ALJ cited the fact that none of the treating physicians placed any substantial functional limitations on Plaintiff.  *Id.*

The ALJ recognized that since April 1, 2015, Plaintiff continues to have severe impairments or combinations of impairments, citing hypogonadism, obesity, left below the knee amputation, neurogenic bladder and bowel, and lumbosacral plexopathy, which cause more than minimal limitations on Plaintiff's ability to perform basic work activities. Tr. 12.  The ALJ noted that a cat scan of Plaintiff's lumbar spine showed prior lumbar fusion and laminectomy defect at L4/L5 level.  Tr. 16 (citing records at Tr. 582).  Based on the finding of these severe impairments, the ALJ determined that Plaintiff cannot perform his past relevant work as an infantry weapons crew member, Tr. 17, but has the residual functional

capacity (RFC) to perform a range of sedentary work with the following

limitations: sit for a total of six hours in an eight-hour workday, with

reasonable customary breaks; stand and walk for two hours per day; lift ten

pounds occasionally and five pounds or less more frequently with his right

hand; lift twenty pounds with his left hand and ten pounds more frequently;

perform the pushing and pulling of arm/hand controls occasionally with right

hand and frequently with the left; occasionally perform pushing and pulling

of foot/pedal controls with both feet; never climb ramps, stairs, ropes,

ladders, or scaffolds; occasionally perform all other postural activities of

balancing, bending, stooping, crouching, crawling, and kneeling; frequently

reach in all directions with both hands; occasional handling, fingering, and

feeling with the right upper extremity, with no such manipulative problems

with the left hand; no limits on ability to see, speak, and hear; may not work

at unprotected heights, around dangerous moving machinery, in proximity

to concentrated industrial vibrations; and, requires a temperature controlled

environment.[5]  Tr. 12.

---

[5] Residual functional capacity is the most a claimant can still do despite
limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the
relevant evidence including the claimant's description of his or her limitations,
observations by treating and examining physicians or other persons, and medical
records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20
C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at
*12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term '*residual functional capacity
assessment'* describes an adjudicator's finding about the ability of an individual to

In making the RFC determination, the ALJ found that Plaintiff's medically determinable impairments could have reasonably been expected to produce some of the alleged symptoms, but concluded that his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence.  In reaching this conclusion, the ALJ recognized the determination of disability dated June 29, 2011, as the CPD, as it is the most recent favorable medical determination for Plaintiff's disability.  Tr. 14. After Plaintiff's case was reviewed, a determination was made that Plaintiff is no longer disabled as of April 2015.  The ALJ noted that Plaintiff contends he continues to be disabled due to below the knee amputation, nerve damage to his right leg, chronic back and hip pain, colostomy implantation, and catheter use.  Tr. 14-15.

In finding that Plaintiff is capable of doing sedentary, light, unskilled work, the ALJ cited medical records showing that, at the CPD, Plaintiff had no motor function of his right foot and was status post below the knee

---

perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

amputation of his left leg.  Tr. 15.  He had a pelvic fracture and required a bone graft in his right forearm.  The ALJ states, "The claimant was determined disabled because his impairments medically equaled Listing 1.05B for amputation of a limb."  *Id.*

In comparing Plaintiff's improved condition to his CPD, the ALJ cited records from January 2014 in which Plaintiff agreed his prosthesis fit well and was pain free to wear.  Tr. 15 (citing records at Tr. 385).  The January 2014 records also indicated that Plaintiff ambulated independently.  *Id.* (citing records at Tr. 298).  Records from November 2014 that show that Plaintiff reported he was training for wheelchair games and riding a hand cycle for over two hours at a time, and requested a prosthesis for swimming.  Tr. 15 (citing records at Tr. 274, 277).  Medical notes from May 2016 also refer to using a hand cycle and walking much of the day, rather than staying in the wheelchair.  Tr. 611.  The ALJ noted that Plaintiff drove himself to the VA medical facility in Tampa from his home in Trenton in May 2016 for his examination.  Tr. 15 (citing records at Tr. 615).

Plaintiff's colostomy bag was reported to be working well in May 2016.  Tr. 15 (citing records at Tr. 612).  The ALJ cites Plaintiff's May 2016 medical notes, which indicated Plaintiff had muscle atrophy in his right arm

and right leg, 4/5 strength and sensation on the right upper extremity and 5/5 on the left upper extremity.  Tr. 15-16 (citing records at Tr. 620).

In June 2016, the ALJ noted, the records showed Plaintiff was "happy" with his current prosthesis but it required some adjustment, and that his stump pain was a "1" on a scale of 1 to 10.  Tr. 15 (citing records at Tr. 603-04).  The ALJ noted the records showed that in August 2014, Plaintiff was pleased with his prosthesis and wore it 16 hours a day.  Tr. 15 (citing records at 277).

The ALJ recognized that the Veterans Administration assigned Plaintiff a service-connected disability rating of 100%, but gave it no weight, noting that the rating is not inconsistent with a finding by the Commissioner that Plaintiff is not completely disabled and that the process to determine disability for each agency is different.[6]  Tr. 16.

---

[6] The ALJ relates that the VA disability rating is based on lower leg muscle injury, stricture of the rectum and anus, paralysis of lower radicular nerve group, third degree burns, limited flexion in his knee, thigh muscle injury, traumatic brain injury, removal of testis, bursitis, loss of a lower leg, facial scars, sinusitis, limited flexion of right forearm, degenerative arthritis of the spine, and neurogenic bladder.  Tr. 16 (citing records at Tr. 254-55).  The ALJ was not required to adopt the VA's conclusion concerning disability.  Breneiser v. Astrue, 231 F. App'x 840, 845 (10th Cir. 2007) (unpublished). The ALJ considered the VA's conclusion but explained why he gave it no weight.  *See id.*; 20 C.F.R. § 404.1512(b)(1)(v) (stating agency will consider "[d]ecisions by any governmental or nongovernmental agency concerning disability.").  Effective March 27, 2017, the regulations governing the SSA's review of decisions by other governmental agencies changed and this quoted language does not appear in the revised version. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5864 (Jan. 18, 2017). The quoted language was in effect at the time of the ALJ's decision on January 19, 2017.

The ALJ also cited, but gave little weight to, the residual functional capacity assessment completed by State agency consultant Arthur Waldman, M.D., on April 9, 2015.  Tr. 16 (citing records at Tr. 318-25).  The RFC assessment by Dr. Waldman limited Plaintiff to a less than medium exertional level work, but the ALJ determined that Plaintiff should be limited to a reduced range of sedentary exertional level with limitations due to intermittent difficulties with walking.  Tr. 16-17.  The ALJ did agree with the assessment by Dr. Waldman that Plaintiff is not disabled.  Tr. 17.

Another residual functional capacity assessment was performed on July 1, 2015, by State agency consultant Loc Kim Le, M.D., who opined that Plaintiff was able to perform at the light exertional limitations with limitations.  *Id.*  Dr. Le cited records from March 24, 2011, through January 26, 2015, and noted that the records showed excellent recovery from the original multiple trauma that Plaintiff suffered in Afghanistan.  Tr. 405.  Dr. Le noted Plaintiff was hand cycling and that Plaintiff's hypogonadism was being treated with low dose testosterone.  *Id.*  Because medical improvement was demonstrated, Dr. Le opined that a light RFC was appropriate.  *Id.*  This opinion was given partial weight by the ALJ, who agreed with the conclusion that Plaintiff was not disabled, but the ALJ placed additional limitations on Plaintiff, reducing him to a less than

sedentary exertional level based on subsequent medical evidence and intermittent difficulties with walking.  Tr. 17.

The ALJ determined that at the CPD, Plaintiff was recovering from multiple traumatic injuries from the IED attack.  *Id.*  The ALJ cited Plaintiff's history of pelvic fracture and low back pain, but found that current evidence indicates he remains stable on use of over-the-counter pain medication.  His recurrent urinary tract infections are resolved with antibiotics.  The ALJ cited the fact that even though Plaintiff needs assistance with personal care and uses a wheelchair at times, he can drive, care for his young children, and perform some light household chores independently.  *Id.*

Based on this analysis and comparison between Plaintiff's current medical conditions, as reflected in the medical records, and his condition at the CPD, the ALJ concluded Plaintiff is not currently disabled.[7]  Relying on the testimony of the vocational expert, and based on Plaintiff's age, education, work experience, and RFC, and Plaintiff's impairments present since April 1, 2015, the ALJ found that Plaintiff can perform a significant number of a full range of unskilled, sedentary jobs in the national economy.

---

[7] The ALJ also considered Plaintiff's history of obesity, which he considered a severe impairment, and noted Plaintiff has had difficulty losing weight due to his prosthesis.  The ALJ concluded that the effects of obesity have contributed to the severity of Plaintiff's other documented impairments.  Tr. 16.  The combination of impairments, however, was not found to meet or medically equal a listed impairment. Tr. 11.

Tr. 18.  The ALJ concluded Plaintiff can perform the representative jobs of Surveillance System Monitor, Call-out Operator, and Ticket Seller, as described by the vocational expert's testimony.  Tr. 18-19.  The ALJ also found that because using the medical-vocational rules as a framework supports a finding that Plaintiff is not disabled, whether Plaintiff has transferable job skills is not material to the determination.  Tr. 18.  In conclusion, the ALJ found that Plaintiff's disability under sections 216(i) and 223(f) of the Social Security Act ended on April 1, 2015, and he has not become disabled again since that date.  Tr. 19.

## II. Legal Standards Guiding Judicial Review

A claimant's continued entitlement to disability benefits must be reviewed periodically.  20 C.F.R. § 404.1594(a).  The Commissioner may terminate a claimant's benefits upon a finding that there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work, and the claimant is now able to engage in substantial gainful activity.  42 U.S.C. § 423(f)(1).  A claimant's entitlement to disability benefits ends when the claimant's medical condition improves sufficiently to permit him to engage in substantial gainful activity. *Id.*

Thus, the ALJ must determine if there has been any medical improvement in the claimant's impairments since the claimant was first determined to be disabled and, if so, whether the medical improvement is related to the claimant's ability to work.  *See* 20 C.F.R. § 404.1594(a). Medical improvement means "any decrease in the medical severity of . . . impairment(s) . . . present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled."  *Id.* § 404.1594(b)(1).  "Medical improvement is related to [the claimant's] ability to work if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision *and* an increase in [the claimant's] functional capacity to do basic work activities. . . ."  *Id.* § 404.1594(b)(3).  "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)."  *Id.* § 404.1594(b)(1).

To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence.  Klaes v. Comm'r of Soc. Sec., No. 17-11859, 2017 WL 6506347, at *1 (11th Cir. Dec. 20, 2017), (citing McAulay v. Heckler, 749

F.2d 1500, 1500 (11th Cir. 1985) (per curiam)); *see also* 20 C.F.R.

§ 404.1594(c)(1).  "[T]here can be no termination of benefits unless there is

substantial evidence of improvement to the point of no disability."  McAulay,

749 F.2d at 1500.  In making such a determination, a "comparison of the

original medical evidence and the new medical evidence is necessary to

make a finding of improvement."  *Id. See also* Freeman v. Heckler, 739

F.2d 565, 566 (11th Cir. 1984) (per curiam) (citing Vaughn v. Heckler, 727

F.2d 1040, 1043 (11th Cir. 1984)); Gombash v. Comm'r, Soc. Sec. Admin.,

566 F. App'x. 857, 859 (11th Cir. 2014) (unpublished).  Without such

comparison, no adequate finding of medical improvement can occur.

Vaughn, 727 F.2d at 1043.  The failure to make such comparison requires

reversal and remand for application of the proper legal standard.  *Id.*; Klaes

v. Comm'r, Soc. Sec. Admin., 499 F. App'x. 895, 896 (11th Cir. 2012)

(citing Vaughn, 727 F.2d at 1043, and noting that if the ALJ fails to evaluate

the prior medical evidence and make the comparison to the new medical

evidence, courts must reverse and remand for application of the proper

legal standard).

In reviewing whether Plaintiff continues to be disabled, the ALJ is

required to follow the sequential evaluation process outlined in the

regulations at 20 C.F.R. § 404.1594(f).  Where a claimant has been

previously determined to be disabled, the question becomes whether he

suffers from a continuing disability.  In making this determination, the ALJ

applies an eight-step analysis to determine continuing disability.  The

Eleventh Circuit has explained the steps as follows:

> (1) Whether the claimant is engaging in substantial gainful
> activity;
>
> (2) If not gainfully employed, whether the claimant has an
> impairment or combination of impairments that meets or equals
> a listed condition;
>
> (3) If impairments do not meet a listing, whether there has been
> medical improvement;
>
> (4) If there has been medical improvement, whether the
> improvement is related to the claimant's ability to do work;
>
> (5) If there is improvement not related to the claimant's ability to
> do work, whether an exception to medical improvement applies;
>
> (6) If medical improvement is related to the claimant's ability to
> do work or if an exception applies, whether the complainant has
> a "severe impairment";
>
> (7) If the claimant has a severe impairment, whether the
> claimant can perform past relevant work; and
>
> (8) If the claimant cannot perform past relevant work, whether
> the claimant can perform other work.

*See* Klaes, 2017 WL 6506347, at *1-2 (citing 20 C.F.R. § 404.1594(f)(1)-

(8)).  The responsibility of weighing the medical evidence and resolving any

conflicts in the record rests with the ALJ.  *See* Battle v. Astrue, 243 F.

App'x 514, 523 (11th Cir. 2007) (unpublished).  Opinions on issues such as

whether the claimant is unable to work, the claimant's RFC, and the

application of vocational factors, "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings dispositive of the case, *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[8]  The Court may not decide the facts anew, reweigh the

---

[8] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the

evidence, or substitute its judgment for that of the Commissioner,

Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the

entire record, consider evidence detracting from the evidence on which the

Commissioner relied, and determine the reasonableness of the factual

findings. *See* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992);

Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986). Review is

deferential, but the reviewing court conducts what has been referred to as

"an independent review of the record." Flynn v. Heckler, 768 F.2d 1273,

1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509

---

weight he has given to obviously probative exhibits, to say that his decision is supported
by substantial evidence approaches an abdication of the court's 'duty to scrutinize the
record as a whole to determine whether the conclusions reached are rational.' " Cowart
v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

(duration requirement).  Both the "impairment" and the "inability" must be

expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S.

212, 215 (2002).

## III. Analysis

Plaintiff challenges the determination that his disability ended in April

2015, alleging that substantial evidence does not support the ALJ's

findings, the RFC determination, and the conclusion that Plaintiff has

experienced medical improvement from the CPD sufficient to allow him to

work at substantial gainful employment.  ECF No. 17 at 31-42.  He

contends that substantial evidence supports a finding that a combination of

injuries and conditions support the opposite conclusion, that is, he is

incapable of full time work.  The Court is mindful and deeply appreciative of

the sacrifice made by Plaintiff in service to his country, and one cannot help

but sympathize.  However, the ALJ, the Commissioner, and this Court are

bound to follow the law as discussed above in determining if Plaintiff's

disability—his inability to perform any substantial gainful employment—

ended in April 2015 by virtue of medical improvement related to his ability

to do work.

The injuries and conditions cited by Plaintiff certainly justified his

initial finding of disability, and the continuance of that finding of disability,

until medical records and other evidence established that his condition had substantially improved.  Those initial injuries and impairments, as cited by Plaintiff, include: hypogonadism from loss of all of one testicle and part of the other, obesity, neurogenic bladder requiring catheterization and neurogenic bowel requiring a colostomy bag, stricture of the rectum and anus, unspecified paralysis, incomplete paraplegia (spinal cord injury affecting movement or feeling), lumbosacral plexopathy secondary to blast injury, injury to median nerve and radial nerve, right forearm deformity and limited flexion, pressure ulcer and osteomyelitis, lower left extremity amputation, right lower leg muscle injury, paralysis of the lower radicular nerve group, and degenerative arthritis of the spine.  ECF No. 17 at 36.

Plaintiff concedes that some medical improvement has been achieved since the CPD—burns are healed, rectal injuries have been addressed by a permanent colostomy, bladder injuries have been addressed with an indwelling catheter, and he has some use of his right hand.  He agrees that the ALJ was correct in refusing to fully rely on the Physical Residual Functional Capacity Assessments of the State agency consultants, which proposed greater functional abilities than those found by the ALJ.  Plaintiff argues, however, that despite the VA's many efforts to provide a prosthesis that makes him completely ambulatory, he is

essentially wheelchair bound, with the added impairment of the recurring pressure sore. *Id.* at 37. He also argues that the ALJ "played doctor" and determined, based on the ALJ's own reading of the medical record and on his "unfounded hunches," that Plaintiff has the RFC to participate in substantial gainful activity at less than a sedentary level of exertion. *Id.* at 39. Plaintiff also contends that the ALJ failed to fairly and fully develop the record in reaching the RFC determination, requiring reversal with directions to contact the treating physician to request an opinion as to Plaintiff's functional limitations and to provide Plaintiff with a supplemental hearing.

Defendant correctly points out that in the CPD, Plaintiff's initial favorable decision, it was determined that Plaintiff met Listing 1.05B due to his amputation and the current extent of his unresolved injuries, but that the ALJ found he no longer met that listing. ECF No. 18 at 7. The ALJ found that Plaintiff no longer met that listing because medical records showed marked improvement since the original allowance of disability, that Plaintiff could ambulate on his left leg prosthesis, that he takes only Tylenol for pain, and none of the treating physicians noted any substantial functional restrictions. Tr. 12.

Listing 1.05B, amputation of a limb, states in pertinent part:

1.05 Amputation (due to any cause).

. . . .

> B. One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months;

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Inability to ambulate effectively is defined as:

> (1) Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.  (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Plaintiff primarily cites his diagnoses in support of his contention that his disability continues.  However, an impairment does not meet the criteria of a Listing based only on a diagnosis.  *See* <u>Saucier v. Comm'r, Soc. Sec. Admin.</u>, 552 F. App'x 926, 928 (11th Cir. 2014) (unpublished); 20 C.F.R. § 404.1525(d).  Plaintiff does not identify any medical records that demonstrate an impairment that satisfies all the criteria of the Listing.

Instead, the medical records demonstrate that Plaintiff does not meet Listing 1.05B.  Plaintiff testified that he wears his prosthesis when he goes out and can walk about half a mile.  Tr. 51.  The medical records indicate, as the ALJ found, that Plaintiff reported he was pleased with his prosthesis. He ambulated independently, his stump and phantom pain was reported as 1 out of 10, and his strength was 5/5 on the left upper extremities and 4/5 on the lower right extremity.  The ALJ noted that Plaintiff cares for his two children and does light household chores.  Tr. 14.  Records show he can drive independently.  Tr. 432.  Although Plaintiff testified he had been using the wheelchair for several months, that was due to his prosthesis being redone and it would be refitted on him in less than a month.  Tr. 48. Nothing in Plaintiff's testimony or the medical records indicated that he

would not be able to successfully ambulate on the prosthesis once it is refitted.

The ALJ was not "playing doctor" in relying on the contents of the medical record in reaching the RFC determination. To the contrary, it was the responsibility of the ALJ to determine Plaintiff's RFC and whether he continues to be disabled based on a review of the medical records. *See* Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014) (holding that "the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC.") (unpublished). The Eleventh Circuit has also made clear that to determine if there has been medical improvement after a determination that disability has ceased, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence. Klaes, 2017 WL 6506347, at *1 (citing McAulay, 749 F.2d at 1500); *see also* 20 C.F.R. § 404.1594(c)(1). The ALJ properly carried out these functions in reaching the RFC determination, and Plaintiff has not identified any medical records to support his contention that he has significant functional limitations beyond those identified in the RFC determination.

In addition to consideration of the medical records, the ALJ also

considered Plaintiff's hearing testimony concerning things he can and

cannot do.  The ALJ noted that Plaintiff cannot do many household chores,

although he tries to help, washes a few dishes, and can prepare simple

food.  Tr. 14.  The ALJ noted that he can help his children with their

homework and supervises their chores; and he tries to attend their

activities.  *Id.*  Plaintiff tried to swim but could not do so because of the

colostomy bag.  His wife helps with changing his colostomy bag and helps

him in other ways, such as cutting his food.  The ALJ noted that Plaintiff's

fused wrist and muscle loss in his right arm impair his ability to lift and carry

with his right hand.  Plaintiff's testimony that he can walk about one-half

mile, stand for about 15 minutes, and sits in his wheelchair for many hours

a day, although he must change positions frequently, was also considered.

*Id.*  The ALJ noted that he has not had any vocational rehabilitation

training.  *Id.*

The ALJ also relied in part on the Physical Residual Functional

Capacity Assessment performed by Dr. Le, who made an examination of

the medical records up through January 2015, and concluded that Plaintiff

could do light work.  Veterans Administration medical records subsequent

to that date do not demonstrate that Plaintiff's condition deteriorated after

the assessment done by Dr. Le.  In June 2015, records indicate that Plaintiff was walking better than in the past.  Tr. 460.  Plaintiff was waiting for a swim prosthesis, *id.*, although it turned out the colostomy bag precluded swimming.  The medical records indicate that in May 2016, Plaintiff reported walking throughout the day and using a hand cycle. Tr. 429.  Those notes indicate Plaintiff drove himself to the examination, which was the distance from Trenton, Florida, to Tampa, Florida.  Tr. 432. The May 2016 records also indicate that his neurogenic bladder and bowel were managed and his hypogonadism was being treated with testosterone. Tr. 620.  May 2016 notes also indicate that Plaintiff had a "Functional Level: K-3."[9]  *Id.*  June 2016 notes indicate Plaintiff was "ambulating quite well" and remaining active, and Plaintiff remained happy overall with his prosthesis.  Tr. 419-20.  Plaintiff reported that his prosthesis fits well and is comfortable.  Tr. 421.  Nothing in the medical records made after Dr. Le's functional assessment detract from Dr. Le ultimate finding that Plaintiff is functionally capable of work.

---

[9] Medicare defines K-levels based on an individual's potential functional ability. A K-level 3 indicates the patient has the ability or potential for ambulation with variable cadence.  A person at level 3 is typically a community ambulator who also has the ability to traverse most environmental barriers and may have vocational, therapeutic or exercise activity that demands prosthetic use beyond simple locomotion. *See* http://www.amputee-coalition.org/inmotion/2013-iss5-sep-oct/do-you-know-your-k-level.pdf (last visited April 30, 2018).

Plaintiff also argues that the ALJ cannot substitute his opinion for the medical and vocational experts, ECF No. 17 at 39, but there are no medical or vocational experts who opined that Plaintiff has any functional limitation beyond those included in the RFC or that he cannot work.  A reviewing court must review the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ.  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  The entire record in this case was reviewed and no evidence could be discovered that detracts from the evidence relied on by the ALJ.  Nor does Plaintiff cite any medical records that contradict the findings of the ALJ.  Moreover, this Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Moore, 405 F.3d at 1211.  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

Finally, Plaintiff argues that the ALJ failed to properly develop the record and should have sought an RFC evaluation from his treating physician.  ECF No. 37-39.  The ALJ is not, however, required to seek additional medical evidence if the record contains sufficient evidence to allow an informed decision.  Ingram v. Comm'r of Soc. Sec., 496 F.3d

1253, 1269 (11th Cir. 2007).  There has been no showing of evidentiary gaps rendering the proceeding unfair or in need of supplementation.  *Cf.* Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (holding that lack of medical and vocational documentation supporting allegations of disability was prejudicial).  The extensive medical record of Plaintiff's visits to and examinations by physicians and other medical personnel at the Veterans Administration Medical Center provided sufficient evidence upon which the ALJ could make an informed decision.  Plaintiff has not demonstrated that any prejudice or a heightened special duty on the part of the ALJ required the ALJ to seek additional medical or functional expert opinion.

Because the Commissioner's decision is supported by substantial evidence, the decision should be affirmed.

## IV. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner that Plaintiff's disability ended on April 1, 2015, and that Plaintiff has not become disabled since that date should be **AFFIRMED** and Judgment entered for Defendant.  Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk should be directed to substitute Deputy

Commissioner for Operations Nancy A. Berryhill, in her current position, as the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on May 3, 2018.

**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**